Chandra Taylor, *Sui Juris*
c/o 7137 Durango Drive
Horn Lake, [near 38637]
MISSISSIPPI STATE

FILED

JUN 19 2012

DAVID CREWS, CLERK
BY _____ Deputy

RECEIVED
JUN 19 2012
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI
UNITED STATES OF AMERICA

| | |
|---|---|
| Chandra Taylor<br>    Plaintiff, | )<br>)<br>) |
| vs. | )<br>)  Civil Action No.: 2:12-CV-107-SA-JMV<br>) |
| OCWEN LOAN SERVICING, LLC;<br>EQUIFIRST CORPORATION;<br>HOMEQ SERVICING;<br>REALTY TITLE & ESCROW CO. INC;<br>MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEM; MERS<br>LEHMAN BROTHERS HOLDINGS, INC;<br>SHAPIRO & MASSEY, LLC;<br>and John Does 1-20<br>    Defendants, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

COMPLAINT TO RESTRICT AND PROHIBIT FORECLOSURE AND SALE, FOR
DAMAGES AND DEMAND FOR TRIAL

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Chandra Taylor, and Plaintiff in the above
entitled matter (hereinafter "Plaintiff"), and makes this
COMPLAINT TO RESTRICT AND PROHIBIT FORECLOSURE AND SALE,
FOR DAMAGES AND DEMAND FOR TRIAL and seeks an order of the
Court prohibiting Foreclosure sale and award damages. In
support of this Complaint, the Plaintiff would show unto
the Court the follows:

support of this Complaint, the Plaintiff would show unto the Court the follows:

## THE PARTIES

1.  At all times herein mentioned Plaintiff was and is a natural person, residing at c/o 7137 Durango Drive, Horn Lake, Desoto County, Mississippi [Near 38637]. Plaintiff is the Grantor of the original Deed of Trust ("Security Instrument") dated September 18th, 2006 and recorded with the Chancery Clerk of Desoto County, State of MISSISSIPPI as instrument No. 1050624 in the amount of $83,920.00 [Exhibit 1] and instrument No. 1050624-B in the amount of $20,980.00.[Exhibit 2]

2.  Defendant EQUIFIRST is/was, and at all times herein mentioned organized and existed under the laws of Delaware and its Headquarters based in Charlotte, North Carolina, a foreign entity transacting business in MISSISSIPPI STATE as EQUIFIRST CORPORATION.

3.  Defendant HOMEQ is/was, and at all times herein mentioned organized and existed under the laws of Delaware and its Headquarters based in North Highlands, California, a foreign entity transacting business in MISSISSIPPI STATE as HOMEQ SERVICING.

4. Defendant OCWEN is/was, and at all times herein mentioned organized under the laws of DELAWARE with its Headquarters based in West Palm Beach, Florida a foreign entity transacting business in MISSISSIPPI STATE as OCWEN LOAN SERVICING, LLC.

5. Defendant, SHAPIRO & MASSEY, LLC ("SHAPIRO & MASSEY") is Substitute Trustee for the benefit of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., "MERS" acting solely as a nominee for "MERS" and it's successors and assigns. "SHAPIRO & MASSEY" is party to this action only in the capacity of Substitute Trustee of Plaintiff's Deed of Trust, and the relief sought against Defendant "SHAPIRO & MASSEY" is injunctive relief prohibiting foreclosure sale & decree for trial.

6. Defendant LEHMAN BROTHERS is/was, and at all times herein mentioned organized under the laws of Delaware with its Headquarters based in New York State a foreign entity transacting business in MISSISSIPPI STATE as LEHMAN BROTHERS HOLDINGS, INC.

7. Defendant REALTY TITLE is/was, and at all times herein mentioned organized under the laws of Tennessee, with its

Regional Headquarters located in Brentwood, Tennessee, a foreign entity transacting business MISSISSIPPI STATE as REALTY TITLE & ESCROW CO., INC.

8. Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") is a Delaware corporation with its principal place of business in the State of Virginia a foreign entity transacting business MISSISSIPPI STATE as MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

9. Plaintiff does not know the true names and capacities of the defendants sued herein as DOES 1 through 20 ("DOE Defendants"), inclusive, and therefore sues said DOE Defendants by fictitious names. Plaintiff is informed and believe and based on such information and belief aver that each of the DOE Defendants is contractually, strictly, negligently, intentionally, vicariously liable and or otherwise legally responsible in some manner for the acts and omissions described herein. Plaintiff will amend this Complaint to set forth the true names and capacities of each DOE Defendant when same are ascertained.

10. "All Persons Unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property

described in the complaint adverse to plaintiffs' title, or any cloud on plaintiffs' title thereto" are sued herein pursuant to Mississippi Code Annotated, Title 47.

11. Plaintiff is informed and believe and based on such information and belief aver that Defendants OCWEN; EQUIFIRST;, HOMEQ; REALTY TITLE; LEHMAN BROTHERS; MERS; SHAPIRO & MASSEY; and DOE Defendants 1 through 20, inclusive, and each of them, are and at all material times have been, the agents, servants or employees of each other, purporting to act within the scope of said agency, service or employment in performing the acts and omitting to act as averred herein. OCWEN; EQUIFIRST; HOMEQ; REALTY TITLE; LEHMAN BROTHERS; MERS; SHAPIRO & MASSEY; and DOE Defendants 1 through 20, inclusive, are hereinafter collectively referred to as the "Foreclosing Defendants".

12. Defendants, SHAPIRO & MASSEY is Trustee for the benefit of Defendant LEHMAN BROTHERS as evidenced by written communication dated June 8th, 2012. [Exhibits 3 and 4] SHAPIRO & MASSEY is party to this action only in the capacity of Trustee of Plaintiff's subsequent Deed of Trust, and the relief sought against Defendant SHAPIRO & MASSEY, LLC is injunctive relief prohibiting foreclosure

and sale of Plaintiffs property.

13.    Each of the Defendants named herein are believed to, and are alleged to have been acting in concert with, as employee, agent, co-conspirator or member of a joint venture of, each of the other Defendants, and are therefore alleged to be jointly and severally liable for the claims set forth herein, except as otherwise alleged.

## JURISDICTION AND VENUE

14.    The United States District Court for the Northern District of Mississippi has jurisdiction based on "diversity jurisdiction" pursuant to The <u>United States Constitution, Article III, § 2</u> and 28 U.S.C. §1331. This Court has jurisdiction over this action pursuant to 28 U.S.C. §2241 because Pending foreclosure sale on Plaintiff's real property is in violation of the Constitution and laws of the United States. The Court has jurisdiction under 28 U.S.C. § 1332, in that the amount in controversy is in excess of $75,000.00. The Plaintiff also invokes the jurisdiction of this Court pursuant to 28 U.S.C. §1343(4) in that the Plaintiff seeks to redress deprivation of rights guaranteed by both the Constitution and federal statutes. Venue is appropriate in this District under 28 U.S.C. § 1391(b)(1),(b)(2), and (c).

## JUDICIAL NOTICE / COGNIZANCE WITH CLAIM OF RIGHTS

15.   The Plaintiff, Chandra Taylor an American Citizens, hereby declare and give *"Notice"* that she invoke the powers and protections of the Constitution and Bill of Rights of the State Of Mississippi and the Constitution and Bill of Rights of the United States Of America, promised her, so that an unequivocally, and unconditionally fair, just, and unbiased proceeding and conclusion of this lawsuit shall be effected.

## **FACTUAL ALLEGATIONS**

16.   Plaintiff, Chandra Taylor, is a natural person that resides at 7137 Durango Drive, Horn Lake, Desoto County, Mississippi [Near 38637].

17.   Plaintiff executed a Deed of Trust to REALTY TITLE as Trustee for the benefit of MERS. Subject Deed of Trust was filed on September 18th, 2006, and recorded in the Office of the Chancery Clerk of Desoto County, State of Mississippi as instrument No. 1050624 and instrument No. 1050624-B.

18.   On or about June 8th, 2012, Defendant, LEHMAN BROTHERS notice the Plaintiff that the Plaintiff mortgage loan had been referred to defendant SHAPIRO & MASSEY for foreclosure proceedings. [Exhibits 3 and 4]

19.   Plaintiff, discovered that in order for Defendant to recover on a promissory note the (**1**) Defendant must prove existence of the note, (**2**) prove that the Plaintiff signed the note, (**3**) that the Defendant is the owner or holder of the note in due course, and that a certain balance is due and owing on the note.

> a) The note is specifically governed by federal law and Negotiable Instruments Law of this State [*Mississippi Code Title 75*] as is the validity of the Mortgage Security interest lien.
>
> b) Unequivocally the Court's rule that in order to prove the "instrument", possession is mandatory.

## **INJUNCTIVE RELIEF**

20.   Plaintiff incorporate herein by reference the allegations made in paragraphs 1 through 19, inclusive, as though fully set forth herein.

21.   Defendants OCWEN; EQUIFIRST; HOMEQ; REALTY TITLE; LEHMAN BROTHERS; MERS; SHAPIRO & MASSEY; and DOE Defendants 1 through 20 and their successors in interest, will in the future engage in conduct in direct violation of the Foreclosure Act, the UCC and the FDCA.

22. That unless enjoinment by this Court, Defendants and all of them will continue in their illegal practices as enumerated in this complaint to the detriment of the Plaintiff.

23. That unless enjoined by this Court, Plaintiff is in imminent threat that the illegal actions of the Defendants will result in the loss of her home, and the eviction from his home and will suffer irreparable harm as a direct result of the wrongful conduct of the Defendants.

24. There is no adequate remedy at law for the damages which will be inflicted upon and suffered by plaintiff if the Defendants and their Successors in interest are not immediately enjoined from continuing with or commencing the foreclosure and eviction.

25. Plaintiff will likely prevail on his claim on the merits of the claim that the Defendants are violating and have violated the Foreclosure Act, the UCC and the FDCA.

26. Public policy requires that injunctive relief must be granted in this matter to stop the violations of the Foreclosure Act, the UCC and the FDCA by the defendants and to prevent further loss and harm to the Plaintiff.

## DECLARATORY RELIEF

27. Plaintiff incorporate herein by reference the allegations made in paragraphs 20 through 26, inclusive, as though fully set forth herein.

28. The dispute that has arisen between the Plaintiff and Defendants and each of them as to the duties and obligations of the respective parties with regard to the loan or the foreclosure.

29. These disputes concern but are not limited to the ownership rights and the validity of the commencement of the foreclosure process.

30. Plaintiff further alleges that a declaration of rights and duties of the parties herein are essential to determine the actual status and validity of the loan, deed of trust, nominated beneficiaries, actual beneficiaries, loan servicers, trustees instituting foreclosure proceedings and related matter.

## FRAUD AND MISREPRESENTATION

31. Plaintiff incorporate herein by reference the allegations made in paragraphs 27 through 30, inclusive, as though fully set forth herein.

32. Defendants and all of them concealed material facts known to them but not to Plaintiff regarding sales and assignments of the Note, transfers of the Note, and charges with the intent to defraud Plaintiff.

33. Defendants and each of them made false representations, concealments and non-disclosures with knowledge of the misrepresentations, intending to induce Plaintiff' reliance thereon, which the unsuspecting Plaintiff justifiably relied upon, resulting in general and special damages as well as mental distress. As a result of Defendants fraudulent conduct, Plaintiff has suffered compensatory, general and special damages in an amount according to proof at trial.

34. Defendants made the above-referenced false representations, concealments and non-disclosures with knowledge of the misrepresentations, intending to induce Plaintiff' reliance, which the unsuspecting Plaintiff justifiably relied upon, resulting in damage to his credit standing, costs and loss of their property. Plaintiff was unaware of the true facts. Had Plaintiff known the true facts, Plaintiff, among other things, would not have maintained the Foreclosing Defendants as their lender, servicer and

trustee (and their alleged agents) and/or would have taken legal action immediately to save his home.

35. As a result of the Defendants' fraudulent conduct, Plaintiff has suffered compensatory, general and special damages in an amount to proof. Additionally, the Defendants acted with malice, fraud and/or oppression and, thus, Plaintiff are entitled to an award of punitive damages.

36. The integrity of the civil litigation process depends on 'truthful disclosure" of facts. A system that depends on an adversary's ability to uncover falsehoods is doomed for failure. *Cox v. Burke,* 706 SO.2d 43, 47 (Fla. 5th DCA 1998).

37. The court's power to impose an involuntary dismissal exists because no litigant has the right to trifle with the courts. *Morgan v. Campbell,* 816 SO.2d 251,252 (Fla. 2nd DCA 2002).

## WRONGFUL FORECLOSURE

38. Plaintiff incorporate herein by reference the allegations made in paragraphs 31 through 37, inclusive, as though fully set forth herein.

39.     Defendant MERS was not and never been a Beneficiary of this loan or any other. MERS is solely a registration service for tracking Trust Deeds and mortgages and also the Notes. MERS records Trust Deeds in their name as a "nominee", with no actual ownership interest in the Loan, the purpose is allegedly to allow the sale and transfer of these instruments without the need for further recordation, however what actually occurs is that the real Beneficiary remains obscured, and unknown. In addition, MERS is not a trustee and has no right to collect any payments on the Note, neither does MERS have any right to enforce the notes or to be a party in any Foreclosure proceedings. Yet, MERS has represented itself in this case to be the beneficiary and in that "stated" but "false" capacity has unlawfully nominated a successive trustee.

40.     Plaintiff' alleges on information and belief that the loan was sold or transferred without notifying the Plaintiff in writing. Therefore, the loan is void of legal rights to enforce it.

41.     Plaintiff alleges that while MERS remain on title as a "nominee" for the Trust Deed and Note both are sold on

several occasions afterward and ultimately bundled as a security and sold to a final investor.

42. Plaintiff sent defendant OCWEN two (2) Electronic Funds Transfer "EFT's" via certified mail #7011 1150 0001 7195 8588 EFT #1072 in the amounts of $81,175.50 and EFT #1073 certified mail #7011 1150 0001 7195 8595 EFT #1073 in the amount of $20,589.53 respectfully to discharge the associated debts. [EXHIBITS 5 and 6]

43. Defendant OCWEN refused to accept EFT #1073 in the amount of $20,589.53 and returned it sighting EFT #1073 was non-negotiable or has a restrictive endorsement. [EXHIBITS 7 and 8]

44. Defendant OCWEN accepts EFT #1072 in the amount of $81,175.50 sighting EFT #1072 was non-negotiable or has a restrictive endorsement but did not return EFT# 1072.

45. Defendant OCWEN refusal to accept these lawful EFT's instrument directed to and received by Defendant OCWEN, on May 11, 2012 were lawfully and properly prepared and directed, so as to set-off and discharge the debts associated with these specific accounts. Because the

original untouched instrument, EFT's, were not returned to Plaintiff within the time limits and manner required for such instruments, this instrument have been lawfully accepted and/or transacted. Further, as unnecessary, but additional fact and proof, the associated control number or wire transfer number is lawful proof that the account has been settled per instruction.

46. Thus, the Defendants and all of them are engaged in a fraudulent foreclosure of the Subject Property in that the Defendants do not have the legal authority to foreclose on the Subject Property. As a result of the above alleged unlawful acts. Plaintiff has suffered general and special damages in an amount to be determined at trial.

## **SLANDER OF TITLE**

47. Plaintiff incorporate herein by reference the allegations made in paragraphs 38 through 46, inclusive, as though fully set forth herein.

48. Defendant MERS, purportedly but falsely acting as either the trustee or the agent of the beneficiary of the Deed of Trust or the agent of LEHMAN BROTHERS, wrongfully and without privilege, caused a Notice of Default to be recorded against the Subject Property.

49. Defendant, MERS again purportedly but falsely acting as either the trustee or the agent of the beneficiary of the Deed of Trust or the agent of LEHMAN BROTHERS, wrongfully and without privilege, caused a Notice of Trustee's Sale to be recorded against the Subject Property.

50. Defendants, and all of them whether jointly or severally, were ever a trustee, beneficiary or assignee of any beneficiary of any Deed of Trust recorded against the Subject Property. Accordingly, they wrongfully caused the recording of the Notice of Default, Notice of Trustee's Sale and Trustee's Deed Upon Sale against the Subject Property.

51. By doing the acts described above, Defendants and all of them have slandered Plaintiff' title to the Subject Property.

52. The conduct of the Defendants caused Plaintiff to suffer general and special damages in an amount to be proven at trial.

## ACTION FOR DAMAGES FOR UNLAWFUL INTERFERENCE WITH POSSSESSORY INTEREST

53. Plaintiff incorporate herein by reference the allegations made in paragraphs 47 through 52, inclusive, as though fully set forth herein.

54. Plaintiff is in formed and believes, and thereupon alleges that said alleged promissory note was never executed by the

Plaintiff, or if it was executed, has long since been lost or intentionally destroyed, or paid in full, or assigned to a third party, such that Defendants, and each of them, lacks or lacked standing to initiate a foreclosure proceeding against the subject property.

55. Plaintiff is in formed and believes, and thereupon alleges that none of the alleged beneficiaries or representatives of the Beneficiary have the original note to prove that they are in fact the party authorized to conduct the foreclosure.

56. Plaintiff is in formed and believes, and thereupon alleges that Defendant(s), through their agent and/or assigns violated the Uniform Commercial Code section 3-305(a), in that they materially altered a contract without the knowledge or consent of the Plaintiff, committed Fraud in the factum, rendering the transaction illegal, and thus this transaction stands as fraud which induced Plaintiff to enter the contract upon terms and conditions other than agreed upon. The Law is expressed as, "§ 3-305. Defense and claims in recoupment.

(a)     General rule: Except as stated in subsection (b), the Right to enforce the obligation of an instrument is subject to the following:

(1)     a defense of the obligator based on:

> (ii) lack of legal capacity or ***illegality of the transaction WHICH UNDER LAW, nullifies the obligation of the obligator;***

> (iii) *fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms;*

57.   Plaintiff is in formed and believes, and thereupon alleges that Defendant(s) violated the laws that Governs the note/ mortgage security interest lien which is governed by the Statues at Large Public Law 13 of the 38th congress Stat 99-118, the National Currency Act which is expressed as prima facie Law under the United States Code Title 12 Banks and Banking, and UCC Article 3 Negotiable Instruments and Article 8 Investments Securities.

a)     The issues here are that the Plaintiff is asserting real defenses against the validity of the original negotiable instrument 'contract' which is the alleged promissory note'.

b)     The first issue is consideration. There has been no loan or consideration in this contract in the amount of approximately $104,000.00.

58.   Plaintiff is in formed and believes, and thereupon alleges that Defendants and all of them violated federal law in

that Banks or Financial Institutions cannot, loan the capital stock of their directors, nor can they loan the money of their depositors, and they can only loan money pursuant to Public Law Volume 13 of the 39th Congress Stat 99-118. Defendants and all of them have not followed any of the provisions of this monetary law of the United States of America.

59. Plaintiff further allege on information and belief that the Banks or financial Institution directors cannot claim ignorance of this because each Director has an Oath to Follow Public Law Volume 13 of the 38th Congress Stat 99-118 which is recorded at the United States Office of the Comptroller of Currency.

### OATH OF DIRECTORS FILED WITH THE COMPTROLLER OF CURRENCY

"Each Director when appointed or Elected, shall take an oath that he will, so far as the duty devolves on him, diligently and honestly administer the affairs of such association, and will not knowingly violate, or willingly permit to be violated any provisions of this act, and that he is the bona fide owner, in his own right, of the number of shares of stock required by this act, subscribed by him, or standing in his name on the books of the association, and that the same is not hypothecated, or in any way pledged, as security for a loan or debt; which oath subscribed by himself, and certified by the officer before whom it is taken, shall be immediately transmitted to the comptroller of

currency, and by him filed and preserved in his office." Section 9 page 102 of the 38th Congress.

60.    Plaintiff further allege on information and belief that Defendants and all of them further violated the law in that they knew or should have that known that Banks and Financial Institutions cannot enter into mortgage agreements beyond a 5 year period. The Plaintiff's note was for a 30 year mortgage which by operation of law is fraudulent.

And be it further enacted, such associations shall not purchase or hold real estate in any other case or for any other purpose than as specified in this section. Nor shall it hold the possession of any real estate under mortgage, or hold the title and possession of any real estate purchased to secure debts due to it for a longer period than five years. Section 28 page 108 of the 38th Congress.

### **CONFLICT OF INTEREST**

61.    Plaintiff incorporate herein by reference the allegations made in paragraphs 53 through 60, inclusive, as though fully set forth herein.

62.    The relationship of MERS to the mortgage transaction is not subject to any easy description. *Landmark Nat. Bank v. Kesler*, 216 P. 3d 158, 164 (Kan. 2009). The supreme court

of Kansas and the Supreme Court of Nebraska have described

MERS as follows:

> "MERS" is a private corporation that administers the MERS system, a national electronic registry that tracks the transfer of ownership interest and servicing rights in mortgage loans. Through the MERS System, MERS becomes the mortgage of record for participating members through assignment of the members at county register of deeds offices. The lenders retain the promissory notes, as well as the servicing rights to the mortgages. The lenders can then sell these interests to investors without having to record the transaction in the public record. MERS is compensated for its services through fees charged to participating MERS members."

> *Id.* At 164 [quoting *Mortgage Electronic Registration Systems, Inc. v. Nebraska Dept. of Banking and Finance*, 704 N.W. 2d 784, 785 (Neb. 2005)

63. Plaintiff is informed and believes that directly after United caused MERS to go on title as the "Nominee Beneficiary" in order to hide the true identity of the successive Beneficiaries when the loan was sold. MERS, however, acted as if they were the actual beneficiary although a Nominee is an entity in whose name a security is registered through true ownership is held by another party, in other words MERS is not the Beneficiary but is used to hide the true identity of the Beneficiary. Based on this failure to disclose, and the lack of consideration paid by MERS, Plaintiff alleges that the Deed of Trust was never perfected and is a nullity as the recording separates the

Debt from the Lien, and this is more so especially upon a sale of the Note and Trust Deed.

64.   Plaintiff further allege that MERS acts as a Nominee for more than one principal in the same transaction, and conceals the identity therefore if a Nominee is the same as an agent MERS cannot act as an agent for multiple Banks, insurance and title companies and Mortgage Companies because of a serious Conflict of interest. In addition Plaintiff allege that a Deed of Trust cannot lawfully be held by a Nominee who has no financial interest in the instrument without disclosing the identity of the actual Beneficiary, and that if a party with no interest in the Note records it in their name the recorded deed is Nullity.

65.   Plaintiff further allege that "MERS" failure to transfer beneficial interests as the Note and deed was sold further renders the Deed recording a nullity.

66.   Plaintiff is informed and believes and therefore alleges that her loan after its origination and funding was sold on multiple occasions, bundled into a group of Trust Deeds and subsequently sold to investors as a Derivative, "Mortgage Backed Security", and that therefore none of these

defendants, owned this loan, or Note and cannot be and are not the Beneficiary, or lawfully appointed trustee, and have no right to declare a default, to cause notices of default to issue or to be recorded, or to foreclose on Plaintiff interest in the subject property, Defendants, and each of them, were/are not the Note Holder or the Note holder in due course or any Beneficiary at any time in regards to this loan.

67.     Defendant, MERS, never owned the Note so it has no standing to assign the Note. The mortgage follows the Note. The Note does not follow the mortgage. The mortgage got assigned to one entity, while the Note got assigned to a completely different entity. This bifurcation means the Note is no longer secured by the mortgage.

68.     Defendants, and each of them, misrepresented facts intending either to force Plaintiff to pay large sums of money to Defendants and each of them to which they were not entitled under the law, or to abandon Plaintiff's property to foreclosure sale.

69.     The true facts were that they were/are not in possession of the note and they were either holders of the note or non-

holders of the note entitled to payment, as those terms in Commercial Code §§ 3301, 3309, and therefore they were/are proceeding to foreclose non-judicially without legal standing. Further Defendants added costs and charges to the payoff amount of the note that were not lawfully justified and proper under the terms of the note or the law.

**The Changing of the State of the Negotiable Instrument**

Plaintiff incorporate herein by reference the allegations made in paragraphs 61 through 69, inclusive, as though fully set forth herein.

70.  Plaintiff's loan has been converted into a stock. It is now and forever a stock what's done can never be undone. Once a loan has been securitized, it forever loses its security (i.e., the Deed of Trust, or the ability for the Defendants to foreclose on Plaintiff's home).

71.  The specific laws governing negotiable instruments are the Uniform Commercial Code. Specifically, the right for a bank to enforce and foreclose on a property is subject to the claimant being a *real party of interest*.

72.  When the loan has been sold, the bank can no longer claim

that they are a real party of interest. Not only that but once a loan has been converted into a stock, it is no longer a loan. If both the loan and the stock exist at the same time, that is a form of securities fraud.

73. A negotiable instrument can only be in one of two states when it undergoes securitization, not both at the same time. It can either be a loan (and treated and governed as such) or a stock (and treated and governed as such). Once it is traded as a stock, it is forever a stock. It is treated as a stock and regulated by the SEC as a stock. On the Plaintiff's Deed of Trust or Mortgage, it has language that says "This Deed of Trust secures a Promissory Note." When that promissory note got converted into a stock that promissory note no longer exists.

74. If a Trust was created to secure Plaintiff's promissory note, and that promissory note is destroyed then that Trust is invalid. The Trust secures nothing. The Deed of Trust is what Defendants uses to give them the right to foreclose on Plaintiff's home. If the Deed of Trust is invalid, then the lender loses their right to foreclose on your home.

## FEDERAL RESERVE NOTES ARE NOT MONEY BY LAW

Plaintiff incorporate herein by reference the allegations made in paragraphs 70 through 74, inclusive, as though fully set forth herein.

**"And no such association shall issue post notes or any other notes to circulate as money than such as are authorized by the forgoing provisions of this act" Section 23 page 106 of the 38th Congress.**

75.  The Federal Reserve Bank in its booklet; MODERN MONEY MECHANICS page 3, states; "In the United States neither paper currency nor deposits have as commodities. Intrinsically, a dollar bill is just a piece of paper, deposits merely book entries."

76.  The "giving a (federal reserve) note does **not** constitute payment." See _Echart v Commissioners C.C.A.,_ 42 Fd2d 158.

77.  The use of a (federal reserve) 'Note' is only a promise to pay. See _Fidelity Savings v Grimes_, 131 P2d 894.

78.  Legal Tender (federal reserve) Notes are not good and lawful money of the United States. See _Rains v State_, 226 S.W. 189.

79. That (federal reserve) 'Notes do not operate as payment in the absence of an agreement that they shall constitute payment.' See *Blachshear Mfg. Co. v Harrell*, 2 S.E. 2d 766.

80. "Federal Reserve Notes are valueless." See IRS Codes Section 1.1001-1 (4657) C.C.H.).

<u>DEFENDANTS LACK STANDING TO COMMENCE FORECLOSURE ACTION</u>

81. Plaintiff incorporate herein by reference the allegations made in paragraphs 75 through 80, inclusive, as though fully set forth herein.

82. Fundamental to the American jurisprudence system is the concept of standing. The Defendant(s) is/are not the real party of interest, and therefore, lacks subject matter jurisdiction on the controversy. *Federal Rules of Civil Procedure Rule 17*, "an action must be pursued by a/the real party of interest".

83. Plaintiff's promissory note became invalid once it has been securitized, under the Uniform Commercial Code; a note is a one of a kind negotiable instrument that has the only legally binding chain of assignment.

84. The promissory note as well as the Deed of Trust must be together at all times and there must always be a clear and unambiguous chain of title that is traceable in public records for all parties of interest in real estate.

85. At the heart of the protections given to homeowners and borrowers by the State of Mississippi, and commands that FORECLOSURE PROHIBITED. See, *In re Jacobson*, 2009 WL 567188 (Bkrtcy. W.D. Wash.) (holding that an entity that claims to be only a servicer for deed of trust note is not a real party in interest, and alleged servicing agent failed to establish that it had standing to enforce deed of trust); *In re Hwang*, 396 B. R. 757 (C. D. Ca., 2008) (holding that mortgage note could not be enforced by a bank that had previously assigned its rights under note to another entity, and retained only loan servicing rights, unless there was joinder of the party that owned the note following the assignment).

86. Defendants and all of them are not the agent of the owner or holder of the original note and mortgage and all relevant assignment(s), if any, and neither the holder nor

the owner of the note, if different from the holder, have joined this action as Defendants.

87. Defendants and all of them are not the owner and holder of the mortgage and note executed by Plaintiff, and has no grounds to commence a foreclosure action against Plaintiff. See, *In re Hwang*, 396 B. R. 757 (C. D. Ca., 2008) (holding that bank to which mortgage note was payable, and which was in physical possession of the note, qualified as the "holder" of the note, even though it had assigned its rights under the note to another entity); Oklahoma UCC §§3-301, 3-305, and 1-201 (for the note to be enforced, the entity asserting the status of holder must be in physical possession of the instrument).

88. Defendant, MERS if it is the proper servicing agent for Plaintiff's note, has not properly communicated instructions to Plaintiff that it is the last entity to whom the Plaintiff have been instructed to make payments, and that it is still the holder of the note.

89.  Defendant's cause of action is barred in whole or in part due to Defendant's violation of state and federal Truth in Lending Acts.

90.  Said violation, in addition to the fact that Plaintiff did not properly receive Notices Right to cancel, constitute violation of 15 U S C sec. 1635(a) and (b) and 12 CFR sec. 226.23(b) and are thus a legal basis for and legally extend Plaintiff right to exercise the remedy of rescission.

91.  Defendants assigned the Note and mortgage to parties who did not take instruments in good faith or without notice that the instruments were invalid or that Plaintiff had a claim in recoupment. Defendants and all of them are not holders in due course and are thus liable to Plaintiff individually, jointly and severally.

92.  On information and belief and given that the consumer credit transaction was an inter-temporal transaction with multiple assignments as part of an aggregation and the creation of a REMIC tranche itself a part of a predetermined and identifiable CMO, all Defendants share in

the illegal proceeds of the transaction; conspired with each other to defraud the Plaintiff out of the proceeds of the loan; acted in concert to wrongfully deprive the Plaintiff of her home; acted/acting in concert and conspiracy to essentially steal the Plaintiff home and/or convert the Plaintiff's home without providing Plaintiff reasonable equivalent value in exchange; and conducted an illegal enterprise within the meaning of RICO statute.

93.   The Supreme Court found that the Plaintiff in a civil RICO action need establish only a criminal "violation" and not a criminal conviction. Further, the Court held that the Defendant need only have caused harm to the Plaintiff by the commission of a predicate offense in such a way as to constitute a "pattern of Racketeering activity." That is, the Plaintiff need not demonstrate that the Defendant is an organized crime figure, a mobster in the popular sense, or that the Plaintiff has suffered some type of special Racketeering injury; all that the Plaintiff must show is what the Statute specifically requires. The RICO Statute and the civil remedies for its violation are to be liberally construed to effect the congressional purpose as broadly formulated in the Statute. *Sedima, SPRL v. Imrex Co.*, 473 US 479 (1985).

94. On information and belief and given the volume of residential loan transactions solicited and processed by the defendants, the Defendants have engaged in two of more instances of racketeering activity involving different victims but utilizing the same methods and means.

95. Plaintiff incorporate herein by reference the allegations made in paragraphs 1 through 80, inclusive, as though fully set forth herein.

## PREMISES CONSIDERED, YOUR PLAINTIFF PRAYS:

**WHEREFORE**, Plaintiff having set forth the claims for relief against Defendants, respectfully pray that this Court grant the following relief against the Defendants:

1. For exemplary and punitive damages;

2. Actual Economic and Non-Economic Damages;

3. For a declaration of the rights of the parties relative to Plaintiff's Home, including a declaration that Defendants have no enforceable lien against Plaintiff's Home;

4. For a preliminary injunction and permanent injunction enjoining all Defendants, their agents, assigns, and all person acting under, for, or in concert with them, from foreclosing on Plaintiff's Home or from conducting at

trustee's sale or causing a trustee's sale to be conducted relative to Plaintiff's Home.

5. Cancellation of the sale and restitution of the home to the Plaintiff; and

6. For damages as provided by statute;

7. For an Order enjoining Defendants from continuing to violate the statutes alleged herein;

8. For an Order, requiring Defendant to reinstate Plaintiff on title to her Property, and or a restraining order preventing Defendants and it's heirs, and/or agents, employees, officers, attorneys, and representatives from engaging in or performing any of the following acts: (i) offering, or advertising this property for sale and (ii) attempting to transfer title to this property and or (iii) holding any auction therefore;

For such other and further relief as the court may deem just and proper.

RESPECTFULLY SUBMITTED this _14th_ day of _June_ , 2012.
  ALL RIGHTS RESERVED—WITHOUT PREJUDICE—WAIVING NONE

_Chandra Taylor_
Chandra Taylor
c/o 7137 Durango Drive
Horn Lake [Near 38637]
MISSISSIPPI STATE

AFFIDAVIT OF TRUTH

STATE OF TENNESSEE
COUNTY OF SHELBY

Chandra Taylor, plaintiff herein, makes oath that the facts
stated in the above petition are true to the best of her
knowledge and belief.

Chandra Taylor
Chandra Taylor


STATE OF TENNESSEE
COUNTY OF SHELBY

On this 18th day of June, 2012, Personally appeared before
me, Chandra Taylor, who on oath, sates that the contents of the
foregoing are true to the best of his knowledge, information and
belief.

WITNESS Plaintiff's hand and seal at Horn Lake, Mississippi this
date.

Jimmy Young
Notary Public

FIAT

TO: CLERK OF COURT

Issue the Temporary Restraining order enjoining Defendants from
proceeding with Foreclosure and sale and any action to evict
Plaintiff from the real property located at 7137 Durango Drive,
Horn Lake, Mississippi [Near 38637] as prayed for in this
complaint.


## CERTIFICATE OF SERVICE

ORIGINAL filed with Federal District Court for the Northern
District of Mississippi this 14th day of June, 2012.

I HEREBY CERTIFY that a true and correct copy of the above MOTION has been furnished by certified U.S. Mail on this 19th day of June, 2012 to:

EQUIFIRST CORPORATION
ATTN: CHARLES W. BRADLEY, PRESIDENT
500 Forest Point Circle
Charlotte, North Carolina, 28273

HOMEQ SERVICING
ATTN: ARTHUR LYON, CEO
4837 Watt Ave.
North Highlands, California 95660-5108

LEHMAN BROTHERS HOLDINGS INC
ATTN: RICHARD SIU, SENIOR VICE PRESIDENT
1271 Avenue of the Americas
New York, New York 10020

OCWEN LOAN SERVICING, LLC
ATTN: RONALD M. FARIS, PRESIDENT
1661 Worthington Road, Suite 100
West Palm Beach, Florida 33409

REALTY TITLE & ESCROW COMPANY INC
ATTN: MATTHEW J MCDONALD, PRESIDENT
1320 Goodman Road
Southaven, Mississippi 38671

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
ATTN: BILL BECKMANN, PRESIDENT
1818 Library Street, Suite 300
Reston, Virginia 20190

SHAPIRO & MASSEY, LLC
ATTN: J. GARY MASSEY, TRUSTEE
1910 Lakeland Drive, Suite B
Jackson, Mississippi 39216

BY: _Chandra Taylor_____, agent
Chandra Taylor, *Sui Juris*
Signed reserving all Plaintiff's
rights at UCC 1-308

# NOTE

*Exhibit 1*

MIN 100200100105062412

| September 18, 2006 | Horn Lake | MS |
|---|---|---|
| (Date) | (City) | (State) |

**7137 Durango Drive, Horn Lake, MS 38637**
(Property Address)

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$ 83,920.00** (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is **EquiFirst Corporation**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of **7.950%**. The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st day** of each month beginning on **November 1, 2006**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of it's scheduled due date and will be applied to interest before principal. If on, **October 1, 2036**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at

**EquiFirst Corporation , 500 Forest Point Circle , Charlotte, NC 28273**
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. **$ 612.86** .

## 4. BORROWER'S RIGHT TO PREPAY

(A) Prepayment      I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing that I am doing so. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

(B) Prepayment Penalty

If I prepay this loan in full within 3 years from the date of the Note, I agree to pay a prepayment penalty to the Note Holder. This penalty will be in addition to any other amounts I may owe under the provisions of the Note or the Security Instrument that secures the Note. If I make the prepayment in full prior to the **first anniversary date of the Note**, the amount of the prepayment penalty will be equal to 5.00% of the unpaid balance of the loan outstanding on the date of prepayment. If I make the prepayment in full on or after the first anniversary date of the Note but prior to the second anniversary date of the Note, the amount of the prepayment penalty will be equal to 4.00% of the unpaid balance of the loan outstanding on the date of prepayment. If I make the prepayment in full on or after the second anniversary date of the Note, but prior to the third anniversary date of the Note, the amount of the prepayment penalty will be equal to 3.00% of the unpaid balance of the loan outstanding on the date of the prepayment. If I make the prepayment in full on or after the third anniversary date of the Note, the Note Holder will impose no prepayment penalty.

Mulitstate Fixed Rate Note-Single Family
(EF5N) 2/00      (Mississippi Version)

# NOTE

*Exhibit 2*

MIN 100200100105062420

September 18, 2006        **Horn Lake**        **MS**
(Date)        (City)        (State)

**7137 Durango Drive, Horn Lake, MS  38637**
(Property Address)

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$ 20,980.00** (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is **EquiFirst Corporation**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of **11.300%**. The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **November 1, 2006**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of it's scheduled due date and will be applied to interest before principal. If on, **October 1, 2036,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at
**EquiFirst Corporation , 500 Forest Point Circle , Charlotte, NC 28273**
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. **$  204.57** .

## 4. BORROWER'S RIGHT TO PREPAY

**(A) Prepayment**      I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing that I am doing so. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**(B) Prepayment Penalty**

If I prepay this loan in full within 2 years from the date of this loan, I agree to pay a prepayment penalty to the Note Holder. This penalty will be in addition to any other amounts I may owe under the provisions of the Note or the Security Instrument that secures the Note. If I make the prepayment in full prior to the first anniversary date of the Note, the amount of the prepayment penalty will be equal to 5.00% of the unpaid balance of the loan outstanding on the date of prepayment. If I make the prepayment in full on or after the first anniversary of the date of the Note but prior to the second anniversary date of the Note, the amount of the prepayment penalty will be equal to 4.00% of the unpaid balance of the loan outstanding on the date of prepayment. If I make the prepayment in full on or after the second anniversary date of the Note, the Note Holder will impose no prepayment penalty.

Mulitstate Fixed Rate Note- Single Family
EF25N (2/00)     (Mississippi Version)



# SHAPIRO & MASSEY, LLC

ATTORNEYS AT LAW

Gerald M. Shapiro
  Admitted in Illinois &
  Florida only
David S. Kreisman
  Admitted in Illinois only
J. Gary "Pete" Massey
  Admitted in Mississippi
  only
Eric C. Miller
  Admitted in Mississippi
  only
Cynthia D. Cohly
  Admitted in Mississippi
  only
Evan J. Lundy
  Admitted in Mississippi
  only

FIRST CLASS & CERTIFIED MAIL RETURN RECEIPT REQUESTED

June 8, 2012

Chandra Taylor
7137 Durango Drive
Horn Lake, MS 38637

*Exhibit 3*

RE:    Lehman Brothers Holdings, Inc.
       Chandra Taylor
       Property Address: 7137 Durango Drive, Horn Lake, MS 38637
       Loan Number: 705997583
       S&M File Number: 10-001589

Dear Chandra Taylor:

Enclosed is a copy of a Substituted Trustee's Notice of Sale covering the deed of trust made to Mortgage Electronic Registration Systems, Inc. as described in the notice. Because a default has occurred in the deed of trust, Lehman Brothers Holdings, Inc., the current holder of this Deed of Trust, has elected to accelerate the indebtedness owing thereon and begin foreclosure proceedings.

The foreclosure ad will run in the DESOTO TIMES-TRIBUNE on June 14, 21, 28, 2012, and the trustee's sale will take place at the East Front Door of the County Courthouse, of DeSoto County, located at Hernando, on July 5, 2012.

Please contact this office if you wish to avoid foreclosure by reinstating your loan. The correct amount must be paid to the undersigned in cash or certified funds prior to the sale. You must also inform this office if you are presently on active duty with the U.S. military.

This is an attempt to collect a debt and any information obtained will be used for that purpose.

Sincerely,

**SHAPIRO & MASSEY, L.L.C.**

J. Gary Massey

Enclosure

---

## SUBSTITUTED TRUSTEE'S NOTICE OF SALE

WHEREAS, on September 18, 2006, Chandra Taylor, a single person, executed a certain deed of trust to Realty Title & Escrow Co. Inc, Trustee for the benefit of Mortgage Electronic Registration Systems, Inc., which deed of trust is of record in the office of the Chancery Clerk of DeSoto County, State of Mississippi in Book 2566 at Page 533; and

WHEREAS, said Deed of Trust was subsequently assigned to Lehman Brothers Holdings, Inc., by instrument dated May 10, 2011 and recorded in Book 3304 at Page 715 of the aforesaid Chancery Clerk's office; and

WHEREAS, Lehman Brothers Holdings, Inc., has heretofore substituted J. Gary Massey as Trustee by instrument dated April 24, 2012 and recorded in the aforesaid Chancery Clerk's Office in Book 3442 at Page 147; and

WHEREAS, default having been made in the terms and conditions of said deed of trust and the entire debt secured thereby having been declared to be due and payable in accordance with the terms of said deed of trust, Lehman Brothers Holdings, Inc., the legal holder of said indebtedness, having requested the undersigned Substituted Trustee to execute the trust and sell said land and property in accordance with the terms of said deed of trust and for the purpose of raising the sums due thereunder, together with attorney's fees, trustee's fees and expense of sale.

NOW, THEREFORE, I, J. Gary Massey, Substituted Trustee in said deed of trust, will on July 5, 2012 offer for sale at public outcry and sell within legal hours (being between the hours of 11:00 a.m. and 4:00 p.m.), at the East Front Door of the County Courthouse of DeSoto County, located at Hernando, Mississippi, to the highest and best bidder for cash the following described property situated in DeSoto County, State of Mississippi, to-wit:

Lot 52, Final Plat Division of Lot 8, Bailey Station PUD Subdivision, situated in Section 28, Township 1 South, Range 8 West, as shown on plat of record in Plat Book 77, Page 38 in the Chancery Clerk's Office of DeSoto County, Mississippi.

I WILL CONVEY only such title as vested in me as Substituted Trustee.

WITNESS MY SIGNATURE on this 8th day of June, 2012.

J. Gary Massey
SUBSTITUTED TRUSTEE

Shapiro & Massey, L.L.C.
1910 Lakeland Drive
Suite B
Jackson, MS 39216
(601)981-9299

7137 Durango Drive
Horn Lake, MS 38637
10-001589GW

TERRY WAYNE GREEN
384 E. GOODMAN ROAD, SUITE #229
SOUTHAVEN, MS 38671

*Account # 0705997583*

1072

87-1/640

DATE *5/8/2012*

PAY TO THE ORDER OF *Ocwen Loan Servicing, LLC* | $ *81,175.50*

*Eighty One Thousand One hundred Seventy five & 50/100* DOLLARS

REGIONS BANK
3061 COVINGTON PIKE
MEMPHIS TN 38128

*EFT ONLY*

FOR *DISCHARGE OF DEBT*

*Terry W. Green*

MP

⑈001072⑈ ⑆064000017⑆ 008226127⑈

---

<table>
<tr><td colspan="2"><strong>SENDER: COMPLETE THIS SECTION</strong></td><td colspan="2"><strong>COMPLETE THIS SECTION ON DELIVERY</strong></td></tr>
<tr><td colspan="2">
■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>
■ Print your name and address on the reverse so that we can return the card to you.<br>
■ Attach this card to the back of the mailpiece, or on the front if space permits.
</td><td colspan="2">
A. Signature<br>
X _____ □ Agent / □ Addressee<br>
B. Received by ( Printed Name) | C. Date of Delivery
</td></tr>
<tr><td colspan="2">
1. Article Addressed to:<br><br>
Ocwen loan Servicing<br>
P.O. Box 6440<br>
Carlo Stream, Illinois 60197-6440
</td><td colspan="2">
D. Is delivery address different from item 1? □ Yes<br>
If YES, enter delivery address below: □ No<br><br>
3. Service Type<br>
☒ Certified Mail □ Express Mail<br>
□ Registered □ Return Receipt for Merchandise<br>
□ Insured Mail □ C.O.D.<br>
4. Restricted Delivery? (Extra Fee) □ Yes
</td></tr>
<tr><td colspan="2">
2. Article Number<br>
(Transfer from service label)
</td><td colspan="2">
7011 1150 0001 7195 8588
</td></tr>
<tr><td colspan="2">PS Form 3811, February 2004</td><td>Domestic Return Receipt</td><td>102595-02-M-1540</td></tr>
</table>

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

7011 1150 0001 7195 8588

Sent To *Ocwen Loan Servicing, LLC*
Street, Apt. No.; or PO Box No. *P.O. Box 6440*
City, State, ZIP+4 *Carol Stream, Ill 60197-6440*

*Exhibit 5*

TERRY WAYNE GREEN
384 E. GOODMAN ROAD, S    #229
SOUTHAVEN, MS 386   1

Account # 0703 997 77

1073

87-1/640

DATE 5/8/2012

PAY TO THE ORDER OF  Ocwen Loan Servicing, LLC          $ 20,589.53

Twenty Thousand Five hundred Eighty Nine & 53/100          DOLLARS

REGIONS BANK
3061 COVINGTON PIKE
MEMPHIS TN 38128

EFT ONLY
FOR  DISCHARGE OF DEBT          Terry W. Green          NP

⑈001073⑈ ⑈064000017⑈ 0082 26127⑈

---

**SENDER: *COMPLETE THIS SECTION***

- ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

   Ocwen loan Servicing
   P.O. Box 6440
   Carlo Stream, Illinois 60197-6440

2. Article Number
   (Transfer from service label)          7011 1150 0001 7195 8595

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                        ☐ Agent
                                         ☐ Addressee

B. Received by ( Printed Name)          C. Date of Delivery

D. Is delivery address different from Item 1?    ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
   ☒ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)          ☐ Yes

---

**U.S. Postal Service**
**CERTIFIED MAIL  RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

7011 1150 0001 7195 8595

Sent To  Ocwen Loan Servicing
Street, Apt. No.; or PO Box No.  P.O. Box 6440
City, State, ZIP+4  Carlo Stream, Ill 60197-6440

PS Form 3800, August 2006          See Reverse for Instructions

Exhibit 6



*OCWEN Loan Servicing, LLC*
*P.O. Box 785063*
*Orlando, FL 32878-5063*
*(Do not send any correspondence or payment to the above address)*       **WWW.OCWEN.COM**

Pursuant to your request, we have updated our records to cease all communication (verbal) with you on the aforementioned loan.

Loan number: 705997591

The loan originated on September 18, 2006 for $20,980.00 by EquiFirst Corporation with the first payment due on November 1, 2006. As we were not involved in the origination of the loan, we cannot comment further regarding any concerns arising from the loan origination.

A Note or a partial interest in the Note may be sold one or more times. Such a sale might result in a change in the entity known as the 'Loan Servicer' that collects periodic payments due under the Note and Mortgage and performs other mortgage loan servicing obligations under the Note, Mortgage and Applicable Laws. Please note that we do not have any control over service transfer of loans.

The servicing rights of the loan were transferred to us on September 1, 2010, from HomEq Servicing with the loan past due for July 1, 2010 payment.

We are obligated to service the loan in accordance with the terms of the original Note and Mortgage signed by the borrower. A review of the original Note indicates you (Chandra Taylor) are responsible for the debt. As such, the above loan is valid.

Our records indicate that on May 16, 2012, we received payoff funds in the amount of $20,589.53, which was returned unpaid for the reason â□□Item is non-negotiable or has a restrictive endorsementâ□□. Please be advised that you are required to remit payments towards the loan only through certified mode of payment. We request that this payment be remitted at the earliest through certified funds.

We have submitted a request to send the payoff quote with a good through date of July 6, 2012, to your attention. This would illustrate the total amount required to payoff the loan, as of the given good through date.

Pursuant to your request, we have updated our records to cease all communication (verbal) with you on the aforementioned loan.

For any further questions or concerns regarding the loans, you may contact our Customer Care Center at (800) 746-2936.

We trust the information provided has fully addressed your concern. Please visit our website (www.ocwen.com) which is available 24 hours a day, seven days a week, as many of the answers to your account specific questions may be found there. However, should you have any further questions in regards to this issue, please contact our Research Department at (800) 241-9960. If after speaking with our Research Department you still have questions or concerns, please feel free to contact the OCWEN consumer advocate by email through OCWEN's website or by phone at (800) 390-4656. You may also send written correspondence to the following address:

Ocwen Loan Servicing, LLC
Attention: Research Department
P.O. Box 24736
West Palm Beach, FL 33416-4736

Exhibit 7

Sincerely,

Cibiya Johnson
Research Department
Ocwen Loan Servicing, LLC

RRCMAINLTRM.12   2

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

Loan Number:705997591                                                          NMLS # 1852



**OCWEN Loan Servicing, LLC**
*P.O. Box 785063*
*Orlando, FL 32878-5063*
*(Do not send any correspondence or payment to the above address)*          **WWW.OCWEN.COM**

June 07, 2012

Chandra Taylor                                   *Exhibit 8*

7137 Durango Drive
Horn Lake, MS  38637

RE: Loan Number:        705997591
Property Address:       7137 Durango Drive
                        Horn Lake, MS  38637

Dear Chandra Taylor :

OCWEN would like to take this opportunity to thank you for your recent communication regarding the above referenced loan. We appreciate the time and effort on your part to bring your concern to our attention. Pursuant to your concern, we have reviewed the loan and below is the recap of our response to the concern raised:

**Concern#1** You stated that you have remitted the funds towards the payoff of the loan and expressed concern regarding the payment returned on the loan. Therefore, you requested us to review and provide you with an explanation in this regard. You also disputed the validity of debt and requested us to cease the telephonic communication.

**Response** We are currently servicing two (2) of your loan numbers 705997583 (1st lien) and 705997591 (2nd lien).

Loan number: 705997583

The loan originated on September 18, 2006 for $83,920.00 by EquiFirst Corporation with the first payment due on November 1, 2006. As we were not involved in the origination of the loan, we cannot comment further regarding any concerns arising from the loan origination.

A Note or a partial interest in the Note may be sold one or more times. Such a sale might result in a change in the entity known as the 'Loan Servicer' that collects periodic payments due under the Note and Mortgage and performs other mortgage loan servicing obligations under the Note, Mortgage and Applicable Laws. Please note that we do not have any control over service transfer of loans.

The servicing rights of the loan were transferred to us on September 1, 2010, from HomEq Servicing with the loan past due for March 1, 2010 payment.

We are obligated to service the loan in accordance with the terms of the original Note and Mortgage signed by the borrower. A review of the original Note indicates you (Chandra Taylor) are responsible for the debt. As such, the above loan is valid.

Our records indicate that on May 16, 2012, we received payoff funds in the amount of $81,175.50, which was returned unpaid for the reason â□□Item is non-negotiable or has a restrictive endorsementâ□□. Please be advised that you are required to remit payments towards the loan only through certified mode of payment. We request that this payment be remitted at the earliest through certified funds.

We have submitted a request to send the payoff quote with a good through date of July 6, 2012, to your attention. This would illustrate the total amount required to payoff the loan, as of the given good through date.

RRCMAINLTRM.12      1

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

Loan Number:705997591                                                    NMLS # 1852